## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ASMI KESSLER,
an individual,

                                              Case No.:

      Plaintiff,

v.

HYUNDAI CAPITAL AMERICA, INC.,
d/b/a HYUNDAI MOTOR FINANCE
A foreign profit corporation,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,
EQUIFAX INFORMATION
SERVICES, LLC,
a foreign limited liability company,
TRANS UNION, LLC,
a foreign limited liability company,

      Defendants.
_____/

## **COMPLAINT**

      **COMES NOW**, Plaintiff, ASMI KESSLER (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, HYUNDAI CAPITAL AMERICA, INC. d/b/a HYUNDAI MOTOR FINANCE (hereinafter "Hyundai Motor Finance"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), EQUIFAX INFORMATION SERVICES, LLC (hereinafter, "Equifax"), and TRANS UNION, LLC (hereinafter, "TransUnion") (hereinafter collectively, "Defendants").   In support thereof, Plaintiff states:

1

## PRELIMINARY STATEMENT

1.     This is an action for damages for violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Telephone Consumer Protection Act, 47 United States Code, Section 227 *et seq.* (hereinafter, the "TCPA"), and the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Hyundai Motor Finance and its representatives attempted to collect consumer debts from Plaintiff on a automobile loan that had been paid in part using gap insurance and was no longer enforceable against Plaintiff—using collection letters, automated debt collection emails, and negative credit reporting in an unlawful attempt to collect the alleged debt from Plaintiff.

2.     Additionally, despite Plaintiff's repeated meritorious disputes of the account's credit reporting, Hyundai Motor Finance, Experian, Equifax, and TransUnion continued to report an account balance as past due on Plaintiff's consumer credit reports and failed to notate the accounts as disputed, both to the substantial detriment of Plaintiff's credit rating and in violation of the FCRA.

## JURISDICTION, VENUE & PARTIES

3.     Jurisdiction of this Court arises under 28 United States Code, Section 1331, as well as pursuant to the TCPA, 47 United States Code, Section 227 *et seq.*, and the FCRA, 15 United States Code, Section 1681, *et seq.*  Supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

4.    Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District and the events described herein occur in this District.

5.    Venue is proper in this District as the acts and transactions described herein occur in this District.

6.    At all material times herein, Plaintiff is a natural person residing in Pasco County, Florida.

7.    At all material times herein, Hyundai Capital America, Inc. d/b/a Hyundai Motor Finance is a foreign profit corporation existing under the laws of the state of California, with its principal place of business located at 3161 Michaelson Drive, Suite 1900, Irvine, California 92612.

8.    At all material times herein, Experian is a foreign for-profit corporation existing under the laws of the state of Ohio, with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

9.    At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 Peachtree Street, NW, H-46, Atlanta, GA 30309.

10.    At all material times herein, TransUnion is a foreign limited liability company existing under the laws of the state of Delaware, with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

**FCRA STATUTORY STRUCTURE**

11.    Congress enacted the FCRA requiring consumer reporting agencies to adopt

reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *Scee* 15 United States Code, Section 1681b.

12.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. 15 U.S.C., Section 1681e(b) (emphasis added).

13.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from the consumer's file before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. 15 U.S.C., Section 1681i(a).

14.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  15 U.S.C., Section 1681i(a)(4).

15.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results

4

of the reinvestigation.  15 U.S.C., Section 1681i(a)(5).

16.    Under the FCRA, if the completeness or accuracy of any information furnished by <u>any person</u> to any <u>consumer</u> reporting agency is disputed to such person by a <u>consumer</u>, the person may not furnish the information to any <u>consumer</u> reporting agency without notice that such information is disputed by the <u>consumer</u>.  15 U.S.C., Section 1681s-2(a)(3).

17.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete **or cannot be verified** after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information. 15 U.S.C., Section 1681s-2(b) (emphasis added).

18.    Under the FCRA, any person who willfully fails to comply with any

5

requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; statutory damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and the costs of the action together with reasonable attorneys' fees and costs. 15 U.S.C., Section 1681n.

19.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorney fees and costs.  15 U.S.C., Section 1681o.

## FCCPA STATUTORY STRUCTURE

20.    The FCCPA is a state consumer protection statute, modeled after the FDCPA, a federal statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., Sections 1692(a) and (e); Fla. Stat., Sections 559.55 and 559.77(5).

21.    The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due to another," and prohibits any such debt collector or person from engaging in particular conduct in connection with

collecting consumer debts. 15 U.S.C., Section 1692(a)(6); Florida Statutes, Section 559.55(5).

22.    Specifically, the FCCPA prohibits certain unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." Fla. Stat., Section 559.55(2) (emphasis added).

23.    For example, the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, or from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt. *See* 15 U.S.C., Sections 1692(d)-(e).

24.    Similarly, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, and also prohibits a person from claiming, attempting, or threatening to enforce a consumer debt "when such person knows that the debt is not legitimate" or by asserting a legal right that does not exist. *See* Fla. Stat., Sections 559.72(7) and 559.72(9).

## **GENERAL ALLEGATIONS**

25.    At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and 15 United States Code, Section 1681a(c).

26.    At all material times herein, Hyundai Motor Finance, itself and through its affiliates, regularly attempts to collect debts, including but not limited to, alleged balances due from Plaintiff on an auto loan.

27.    At all material times herein, Hyundai Motor Finance is a "person" subject to Florida Statutes Section 559.72. *See* Florida Statutes, Section 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

28.    At all material times herein, Hyundai Motor Finance is also a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

29.    At all material times herein, Hyundai Motor Finance is a "debt collector" as defined by Florida Statutes, Section 559.55(7).

30.    At all material times herein, Hyundai Motor Finance uses interstate mail while engaging in a business, the principal purpose of which is the collection of consumer debts.

31.    At all material times herein, Hyundai Motor Finance attempts to collect a debt, including but not limited to, an alleged balance on the Account.

32.    At all material times herein, Hyundai Motor Finance attempted to collect debts, including but not limited to, alleged balances due from Plaintiff on a vehicle loan, referenced by account number ending - 1325, (herein, the "Account" or "Debt").

33.    At all material times herein, the alleged balance due on the Account is a consumer debt, an obligation resulting from a transaction for goods or services incurred

primarily for personal, household, or family use.

34.     At all material times herein, Hyundai Motor Finance's conduct regarding the Account complained of below—including furnishing the alleged Account information to consumer reporting agencies—qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

35.     At all material times herein, Hyundai Motor Finance furnished information concerning the Account to Experian, Equifax, and/or TransUnion in a knowing attempt to extract and collect payment from Plaintiff on the Account.[1]

36.     Hyundai Motor Finance furnishes, reports, publishes, and verifies via investigation specific details of consumers' alleged outstanding or delinquent debt accounts to compel or coerce the alleged debtor to either satisfy the alleged balance or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

37.     At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.   Experian disburses such

---

[1] *See Arianas v. LVNV Funding*, 2015 WL 404238, Case No. 8:14-cv-01531-T-27-EAJ (M.D. Fla. Jan. 8, 2015) (noting that while furnishing information to a consumer credit bureau *alone* cannot constitute an attempt to collect a debt in violation of the FCCPA as such violation is preempted by the FCRA, a creditor that "knowingly [attempts] to enforce payment on accounts" by reporting the debt to a consumer reporting agency *can* engage in unlawful debt collection in violation of the FCCPA—not preempted by the FCRA—even without any additional collection attempts) (emphasis added); *see also Best v. Bluegreen Corporation*, 2014 WL 6883083, Case No. 14-80929-CIV (S.D. Fla. Dec. 4, 2014); *In re Russell*, 378 B.R. 735, 743 (Bankr. E.D.N.Y. 2007); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991); and *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

consumer reports to third parties under contract for monetary compensation.

38.    At all material times herein, Equifax is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax disburses such consumer reports to third parties under contract for monetary compensation.

39.    At all material times herein, TransUnion is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  TransUnion disburses such consumer reports to third parties under contract for monetary compensation.  Where appropriate herein, Experian, Equifax, and TransUnion are sometimes collectively referred as the "Credit Reporting Agencies" or the "CRAs."

40.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

41.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived the same.

## **FACTUAL ALLEGATIONS**

42.    On November 3, 2017, an auto loan was taken out by the Plaintiff to finance the purchase of a vehicle (i.e., the "Debt").

10

43.     The Debt was incurred primarily for personal, household or family use. More specifically, the Debt was used to obtain Plaintiff's homestead residence.

44.     In December 2019, the Plaintiff was involved in a car accident due to no fault of her own.

45.     On or about December 16, 2019, Plaintiff's insurance company, Traveler's Insurance, deemed the vehicle a total loss.

46.     On or about December 18, 2019, Hyundai Motor Finance sent a letter (the "Gap Letter") acknowledging that the Plaintiff was entitled to gap coverage benefits under her Hyundai Protection Plan issued by Azad. Please see attached a true and correct copy of the Gap Letter, labeled as **Exhibit "A".**

47.     On or about March 24, 2020, the Hyundai Protection Plan issued check number 0116195 in the amount of $4,913.21 to Hyundai Motor Finance (the "Gap Coverage Payment"). Please see attached a true and correct copy of the Gap Coverage Payment, labeled as **Exhibit "B".**

48.     Despite having received the Gap Coverage Payment from the Hyundai Protection Plan, Hyundai Motor Finance continued to attempt to collect on the Debt and allege that installment payments were past due.

49.     On or about March 28, 2020, Hyundai Motor Finance sent a statement to Plaintiff in an attempt to collect the debt, demanding payment in the amount of $1, 131.03 (the "March Hyundai Statement")

50.    On or about April 11, 2020, Plaintiff emailed Hyundai Motor Finance to acknowledge receipt of the March Hyundai Statement and explain the Gap Coverage Payment.

51.    On or about April 11, 2020, Plaintiff received an automated email stating that an agent of Hyundai Motor Finance would be in contact within 2 to 3 business days, but Plaintiff never received any further communication in response to this email.

52.    On or about April 14, 2020, Hyundai Motor Finance sent a letter to Plaintiff in an attempt to collect the Debt, which demand payment from Plaintiff on the Account for the sum of $5,282.95. The amount claimed as owed and due in full did not account for or reflect the Gap Coverage Payment (the "April Hyundai Statement").

53.    In April 2020, Plaintiff obtained a copy of her Experian credit report (the "April 2020 Experian Report").

54.    In the April 2020 Experian Report, Hyundai Motor Finance reported the Account with a balance owed and past due .

55.    The April 2020 Experian Report further included a second account reported by Hyundai Motor Finance ending in -1573 with a balance owed in excess of $23,000 (the "Second Account").

56.    The Second Account was satisfied by Plaintiff years prior with a vehicle trade in and as evidenced by later financing and business dealings with Hyundai Motor Finance

57.    On or about April 24, 2020, Plaintiff disputed Hyundai Motor Finance's credit reporting to Experian (hereinafter, the "First Experian Dispute Letter").

58.    In the First Experian Dispute Letter Plaintiff disputed Hyundai Motor Finance's inaccurate reporting of the Account and Second Account, explaining that:

a.    Any liability as to indebtedness on the Account had been resolved;

b.    The Account should be updated to reflect a balance of zero and no amounts past due; and

c.    The Second Account should be updated to reflect that it was paid off in full.

59.    On or about April 24, 2020, Plaintiff received an email from Experian notifying her that her dispute was open and that the dispute should be resolved by May 23, 2020.

60.    On or about April 28, 2020, Experian sent an email to Plaintiff stating that they were still working on her dispute.

61.    The Plaintiff did not receive a response or a resolution of the First Experian Dispute Letter.

62.    On or about May 7, 2020, Plaintiff received an email from Hyundai Motor Finance in an attempt to collect the debt by demanding payment in the amount of $1,514.12 by May 17, 2020.

63.    On or about June 8, 2020, Plaintiff requested credit to jointly finance a homestead residence with her husband, and was denied.

64.    A copy of the credit report used in making the underwriting decision indicated that Plaintiff had a credit score of 649.  The credit report further indicated that the key factors adversely affecting Plaintiff's credit were (i) serious delinquency; (ii) time

since delinquency is too recent; (iii) amount past due on accounts, (iv) too many inquiries in the last 12 months; and (v) length of time accounts have been established. Plaintiff's credit score was approximately 800 before the December 2019 car accident.

65.     Because of the negative impact Hyundai Motor Finance's reporting had on her credit score, in July 2020 Plaintiff's  husband financed their homestead without Plaintiff on the Note thereby denying Plaintiff the benefit of the reporting of the mortgage.

66.     On or about September 16, 2020, Plaintiff received a letter from Alltran Financial, LP stating that Hyundai Motor Finance had referred the Debt to Alltran Financial, LP for collection.

67.     On or about September 25, 2020, Plaintiff initiated a 3-way call between Azad and Hyundai Motor Finance to resolve the dispute surrounding the Debt. Hyundai Motor Finance stated that it would take three (3) business days to resolve the dispute.

68.     Approximately two (2) weeks later, after receiving no response or resolution regarding the Debt, Plaintiff called Hyundai Motor Finance, and the dispute regarding the Debt had not been resolved.

69.     On or about October 16, 2020, Plaintiff called Hyundai Motor Finance yet again in an attempt to resolve the dispute regarding the Debt.

70.     During the immediately aforementioned call, Plaintiff spoke with Shante in recovery who indicated that she had no additional information regarding Plaintiff's dispute.

71.     Shortly thereafter, Plaintiff retained legal counsel, Rebbecca Goodall, Esq., to represent her with respect to the Debt and related debt collection and credit reporting.

72.     In October 2020, Plaintiff obtained her Equifax credit report, and once again, the credit report reflected a balance of $5,456.00 with Hyundai Motor Finance that was 60 days past due.

73.     On October 26, 2020, Plaintiff through her legal counsel, disputed the debt and amount owed by separate letters to Alltran Financial, LP and cc'ed Hyundai Motor Finance (hereinafter, the "Debt Validation Letter"). Please see attached a true and correct copy of Plaintiff's Debt Validation Letter, labeled as **Exhibit "C".**

74.     In the Debt Validation Letter, Plaintiff disputed the amounts alleged to be owed to Hyundai Motor Finance, explaining that:

> a.   The Account was paid by GAP insurance;
>
> b.   Any liability as to the indebtedness on the Account had been resolved; and
>
> c.   To the extent an amount was owed requested verification of the amounts alleged as owed without a response.

75.     Plaintiff has been continuously represented by counsel with respect to the Debt from at least October 26, 2020 to the present, and Hyundai Motor Finance, as well as its agents and assigns, have always had notice of Plaintiff's representation by counsel during this period with respect to the Debt.

76.     On November 7, 2020 Notwithstanding Plaintiff having retained counsel with respect to the Debt. Hyundai Motor Finance contacted Plaintiff directly by email in an attempt to collect the Debt, by requesting a payment of $3,721.46 that was allegedly due by November 17, 2020.

77.    On October 27, 2020, Plaintiff obtained a copy of her Equifax credit report(hereinafter, the "October 2020 Equifax Report").

78.    In the October 2020 Equifax Report, Hyundai Motor Finance reported the Account with a balance due of $23,854.

79.    On November 11, 2020, Plaintiff disputed Hyundai Motor Finance's credit reporting by separate letters to Experian, Equifax and TransUnion (hereinafter, the "Second Dispute Letter").[2]  Please see attached a true and correct copy of Plaintiff's Second Dispute Letter, labeled as **Composite Exhibit "D".**

80.    In the Second Dispute Letter, Plaintiff disputed Hyundai Motor Finance's inaccurate reporting of the Account, explaining that:

d.    The Account had been fully or at least partially satisfied due to a payment by GAP insurance, and enclosed a copy of correspondence from the GAP insurance;

e.    Any liability as to indebtedness on the Account had been resolved or was grossly overstated;

f.    The Account should be updated to reflect a balance of zero and no amounts past due;

g.    A Second Account was being improperly reported with a balance that was not owed and had previously been satisfied; and

h.    Both accounts should be updated to reflect that Plaintiff's disputes.

---

[2] Labeled as the Second Dispute Letter based on the First Experian Dispute Letter at ¶ 57.

81.     On or about November 24, 2020, Experian acknowledged receipt of the Second Dispute Letter, which was Plaintiff's second dispute to Experian when considered with the Second Experian Dispute Letter.

82.     Experian, Equifax and TransUnion communicated Plaintiff's Second Dispute Letter to Hyundai Motor Finance.

83.     Plaintiff further sent a copy of her Second Dispute Letter directly to Hyundai Motor Finance.

84.     On December 10, 2020, Experian sent Plaintiff a letter in response to her Second Dispute Letter  (hereinafter, "Experian's First Response") providing "updated information" regarding the Account; Hyundai Motor Finance, however, still reported the Account to Experian on Plaintiff's credit report as "charged off" with a balance due of $5,456, and a past due balance of $5,456.

85.     Experian also continued to report the Second Account with Hyundai Motor Finance as having a balance due of $23,120. Experian did not report or note Plaintiff's dispute with respect to the Second Account

86.     TransUnion has not responded to the Second Dispute Letter.

87.     Equifax has not responded to the Second Dispute Letter.

88.     Experian's First Response contained no indication of Plaintiff's disputes regarding the Second Account (i.e., the First Experian Dispute Letter and Second Dispute Letter).  Additionally, the response contained no other clarification indicating that Plaintiff had no personal obligation to pay the balance or a portion of the balances allegedly due on the accounts to protect her credit rating from harm.

89.    Hyundai Motor Finance communicated the negative history and the amount due and past due amounts to the CRAs in an attempt to collect the Account and Second Account from Plaintiff.

90.    Furthermore, Hyundai Motor Finance communicated the results of its investigation to Plaintiff via Experian, conveying to Plaintiff that a balance was both due and past due regarding the Account.

91.    Plaintiff retained Kopp Law, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

92.    As a direct result of the debt collection, communicating, and inaccurate reporting of the Account and Second Account on Plaintiff's credit reports, Plaintiff's credit score has dropped more than 150 points and Plaintiff was unable to obtain approval for financing to purchase her homestead with her husband, depriving of the benefit of the positive reporting of on time payments on such loan.

93.    Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite her dispute efforts, Plaintiff must endure the erroneous and incorrect reporting of the Account, as well as Hyundai Motor Finance's continued unlawful continued debt collection attempts. Plaintiff would literally break down into tears every time she tried to call Hyundai or Azad about the Gap Coverage Payment,

94.    Plaintiff further dealt with the stress and anxiety of feeling hopeless believing that she would be denied credit as a result of the erroneous and incorrect reporting

of the Account, and that Plaintiff would instead pay higher interest rates in the event she could obtain financing.  In fact, Plaintiff suffered additional actual damages in the form of damage to her credit reputation, higher credit costs, other additional costs and fees, and less access to credit.

95.    The FCCPA, Section 559.77, provides for the award of up to $1,000 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Hyundai Motor Finance.

96.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of between $100 up to $1,000 in statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Hyundai Motor Finance, Equifax, Experian, and/or TransUnion.

97.    At all material times herein, it would have been possible for Defendants to avoid violating the terms of the FCCPA and FCRA.

## COUNT ONE:
## UNLAWFUL DEBT COLLECTION PRACTICE—
## VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)

Plaintiff re-alleges paragraphs one (1) through ninety-seven (97) as if fully restated herein and further states as follows:

98.    Hyundai Motor Finance is subject to, and violated the provisions of, Florida Statutes, Section 559.55(7) by collecting consumer debts from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

99.    Specifically, Hyundai Motor Finance had actual knowledge of Plaintiff's legal representation with respect to the Debt and possessed legal counsel's name and contact information.

100.    Despite the above referenced knowledge, Hyundai Motor Finance continued to communicate directly with Plaintiff by sending payment emails May 2020 and November 2020.

101.    Hyundai Motor Finance further had actual knowledge by virtue of Plaintiff's multiple calls and communications, including the Debt Validation Letter and communications with Hyundai Motor Finance's agents that (i) the vehicle was involved in an accident; (ii) the vehicle was declared a total loss; (iii) all or large portion of the Debt was to be paid by the Gap Coverage Payment, and (iv) proof of the Gap Coverage Payment.

102.    Further, despite Plaintiff's letters and calls disputing Hyundai Motor Finance's credit reporting of the Account on Plaintiff's credit reports, and despite Hyundai Motor Finance's actual knowledge that it was not entitled to the Debt alleged to be owed, Hyundai Motor Finance reported Plaintiff's Account with a balance of $5,383.00, as 60 days past due in the amount of $5,456.00 and reported as the Account as "charged off."

103.    In response to Plaintiff's disputes, Hyundai Motor Finance reported the results of its reinvestigations of the Account to Plaintiff, indirectly via the credit bureaus, conveying information to Plaintiff in an attempt to collect the illegitimate Debt from Plaintiff.

104.    Hyundai Motor Finance further refused to respond to Plaintiff's disputes and requests for validation of the Debt but continued to attempt to collect upon the Debt through emails demanding amounts owed.

105.    Hyundai Motor Finance sent each of the aforementioned emails in an attempt to abuse and harass Plaintiff into believing that despite Plaintiff having retained legal counsel with respect to the Debt, despite having a GAP payment submitted to Hyundai Motor Finance on her behalf, and despite multiple disputes of the Debt with the CRAs, Alltran Finanical, LP, and Hyundai Motor Finance itself, that Hyundai Motor Finance could and would continue its Debt collection attempts until Plaintiff paid Hyundai Motor Finance the full amount alleged to be owed on the Debt, despite the Gap Coverage Payment.

106.    Hyundai Motor Finance's conduct served no purpose other than to annoy and harass Plaintiff into paying the Debt when it had been paid by the Gap Coverage Payment.

107.    Hyundai Motor Finance's willful and flagrant violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

108.    As a direct and proximate result of Hyundai Motor Finance's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)**

Plaintiff re-alleges paragraphs one (1) through ninety-seven (97) as if fully restated herein and further states as follows:

109.    Hyundai Motor Finance is subject to, and violated the provisions of, Florida Statues, Section 559.72(9), by attempting to collect the Debt with knowledge that the alleged Debt is not legitimate or by asserting the existence of some legal right when Hyundai Motor Finance knows that the right does not exist.

110.    Specifically, Hyundai Motor Finance possessed actual knowledge of the Gap Coverage Payment made to Hyundai Motor Finance by Azad and that the Plaintiff did not owe the full alleged balance of $5,383.00.

111.    Plaintiff participated in numerous calls with Hyundai and Azad in an attempt to resolve the discrepancy between the amount allegedly owed and receipt of the Gap Coverage Payment.

112.    Hyundai Motor Finance claims that it never received payment or a check to cover the balance allegedly owed, however, in the Gap Letter Hyundai acknowledged that the amount allegedly owed on the Account was much less than the $5,383.00 and matches the same amount sent in the Gap Coverage Payment.

113.    To the extent there is a balance owed on the Account after application of the Gap Coverage Payment, Plaintiff has repeatedly requested validation or an accounting of the amount alleged to be owed to Hyundai Motor Finance. Despite Plaintiff's multiple requests and disputes, Hyundai Motor Finance has failed to respond.

114.    Hyundai Motor Finance has actual knowledge that it has no right to collect the full balance of $5,383 on the Account from Plaintiff because Hyundai Motor Finance

received the Gap Coverage Payment which covered the amount alleged ot be owed in the Gap Letterand was subject to the Debt Validation Letter, First Dispute Letter, and Second Dispute Letter as to the validity of the Debt.

115.    Despite Plaintiff's letters disputing Hyundai Motor Finance's credit reporting of the Debt on Plaintiff's credit reports, and despite Hyundai Motor Finance's actual knowledge that Plaintiff did not owe the alleged balance in excess of $5,000, Hyundai Motor Finance reported the Account with a balance of $5,383.00 as 90 or even 120 days past due in the amount of $5,456.00, and reported as the Account as "charged off."

116.    Further, in response to Plaintiff's disputes, Hyundai Motor Finance reported the results of its reinvestigations of the Account to Plaintiff, indirectly via the credit bureaus, knowingly conveying information to Plaintiff in an attempt to collect the Debt from Plaintiff.

117.    Moreover, despite its actual knowledge that the Debt had been paid and satisfied by the Gap Coverage Payment  by Azad to Hyundai Motor Finance, Hyundai Motor Finance continued to attempt to collect the Debt directly from Plaintiff by contacting her through email and by phone , all done in reckless disregard of Plaintiff's right to be free from illegitimate, unlawful Debt collection attempts.

118.    In sum, during the course of Hyundai Motor Finance's attempts to collect the Debt, it knowingly and falsely asserted that the Debt was legitimate, and falsely asserted that it still had the right to collect the Debt directly from Plaintiff despite possessing actual knowledge of Plaintiff's disputes and the waiver of the Debt.

119.    As a direct and proximate result of Hyundai Motor Finance's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## COUNT THREE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)

Plaintiff re-alleges paragraphs one (1) through ninety-seven (97) as if fully restated herein and further states as follows:

120.    Hyundai Motor Finance is subject to, and violated the provisions of, Florida Statues, Section 559.72(18), by communicating with a debtor when Hyundai Motor Finance has actual knowledge that Plaintiff was represented by legal counsel with respect to the Debt.

121.    Specifically, Hyundai Motor Finance received the (i) Debt Validation Letter; and (ii) Second Disputer Letter.

122.    All of the aforementioned documents provided Hyundai Motor Finance with actual knowledge of Plaintiff's legal representation with respect to the Debt and provided such counsel's contact information.

123.    Despite Hyundai Motor Finance's actual knowledge of Plaintiff's representation by legal counsel with respect to the Debt, Hyundai Motor Finance continued to communicate directly with Plaintiff in an attempt to collect the debt, by emailing her directly after October 26, 2020, done in reckless disregard of Plaintiff's right to be free from illegitimate Debt collection attempts.

124.    As a direct and proximate result of Hyundai Motor Finance's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**

Plaintiff re-alleges paragraphs one (1) through ninety-seven (97) as if fully restated herein and further states as follows:

125.    Hyundai Motor Finance is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully or negligently publishing or furnishing—or both—inaccurate Account information within Plaintiff's credit reports, failing to fully and properly investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to correctly report the Account and Second Account on Plaintiff's credit reports after investigating Plaintiff's disputes.

126.    As described above, despite receiving notice of Plaintiff's disputes from Plaintiff as well as from TransUnion, Equifax, and Experian, Hyundai Motor Finance willfully or negligently reported—or both—erroneous credit information regarding the Account and Second Account to the TransUnion, Equifax, and Experian.

127.    Specifically, after receiving notice of Plaintiff's repeated disputes from TransUnion, Equifax, and Experian, Hyundai Motor Finance inaccurately reported the Account as past due, as charged-off, and failed to deduct the amount paid by the Gap Coverage Payment, which ultimately reflected negatively on Plaintiff's credit reports and credit file.

128.    Additionally, Hyundai Motor Finance violated the FCRA, Section 1681s-2(b)'s, "completeness" requirement by failing to notate in its reporting to TransUnion, Equifax, and Experian that the Account and Second Account were disputed by Plaintiff.

25

129.    Further, Hyundai Motor Finance reported the immediately-aforementioned negative information with actual knowledge that the Debt associated with the Account was satisfied by the Gap Coverage Payment.

130.    Hyundai Motor Finance's investigations were not conducted in good faith.

131.    Hyundai Motor Finance's investigations were not conducted reasonably.

132.    Hyundai Motor Finance's investigations were not conducted using all information reasonably available to Hyundai Motor Finance.

133.    As a result of Hyundai Motor Finance's conduct, actions, or inactions, Plaintiff was damaged, suffering injury to her credit and reputation, credit score, and a loss of access to credit, all as a result of reporting and collecting the Account that was paid by the Gap Coverage Payment.

134.    Hyundai Motor Finance's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

135.    Hyundai Motor Finance's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FIVE**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**

Plaintiff re-alleges paragraphs one (1) through one ninety-seven (97) as if fully restated herein and further states as follows:

136.    TransUnion, Equifax, and Experian are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

137.    TransUnion, Equifax, and Experian each willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding Plaintiff's Account.

138.    Specifically, despite the First Experian Dispute Letter  in which Plaintiff directly informed Experian that the Debt associated with the Account had been paid by the Gap Coverage Payment  and that any associated personal liability had been resolved, Experian continued to report the Account with a balance due and past due in the amount of $5,456, and did not reference Plaintiff's dispute, or notate Plaintiff's Account that no balance was personally owed, causing the Account to be included when calculating Plaintiff's credit score, which caused her credit score to fall, and correspondingly inhibited Plaintiff from obtaining the desired financing for her home.

139.    Further, Experian willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when reinvestigating Plaintiff's disputes of the above-referenced inaccuracies contained in Plaintiff's credit reports.

140.     Specifically, despite the Second Dispute Letter in which Plaintiff provided TransUnion, Equifax, and Experian with additional proof that the Account and Second Account were satisfied and paid, TransUnion, Equifax, and Experian continued to report the Account as past due and charged off, and did not reference Plaintiff's disputes, causing the Account to be included when calculating Plaintiff's credit score, which caused her credit score to fall.

141.     Such reporting of the Account is false, short-sighted and evidences TransUnion's, Equifax's, and Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

142.     As a result of TransUnion's, Equifax's, and Experian's conduct, actions, and inactions, Plaintiff incurred higher interest rates and less favorable terms on consumer loans and other consumer transactions and was denied access to her credit.

143.     TransUnion's, Equifax's, and Experian's conduct was a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

144.     TransUnion's, Equifax's, and Experian's individual violations of 15 United States Code, Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT SIX:**
**FAIR CREDIT REPORTING ACT—**

**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)**

Plaintiff re-alleges paragraphs one (1) through ninety-seven (97) as if fully restated herein and further states as follows:

145.    TransUnion, Equifax, and Experian are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable reinvestigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the information in Plaintiff's credit reports and credit file.

146.    Specifically, TransUnion, Equifax, and Experian willfully or negligently refused, or both, to properly reinvestigate Plaintiff's consumer report upon receiving Plaintiff's disputes, as described herein.

147.    For example, despite receiving Plaintiff's First Experian Dispute Letter and Second Dispute Letter, TransUnion's, Equifax's, and Experian's reinvestigations were not conducted in such a way as to assure the maximum possible accuracy of the Account on Plaintiff's credit reports.

148.    As noted above, TransUnion, Equifax, and Experian did independently verify with Hyundai Motor Finance whether the Debt and Plaintiff's corresponding liability was satisfied as part of the Gap Coverage Payment.

149.    Furthermore, TransUnion, Equifax, and Experian continuously reported the Account as a past due and charged off obligation on Plaintiff's credit reports without referencing Plaintiff's disputes or the fact that the Debt associated with the Account had been paid by the Gap Coverage Payment.

150. Such credit reporting is false and evidences TransUnion's, Equifax's, and Experian's failure to conduct a reasonable reinvestigation of Plaintiff's disputes regarding the Account.

151. TransUnion's, Equifax's, and Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

152. TransUnion's, Equifax's, and Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

153. TransUnion's, Equifax's, and Experian's reinvestigation procedures are unreasonable.

154. TransUnion's, Equifax's, and Experian's reinvestigations of Plaintiff's disputes were not conducted using all information reasonably available to the CRAs.

155. TransUnion's, Equifax's, and Experian's reinvestigations were *per se* deficient by reason of these failures in the CRAs' reinvestigations of Plaintiff and the Account.

156. TransUnion's, Equifax's, and Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT SEVEN:
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)</u>

Plaintiff re-alleges paragraphs one (1) through ninety-seven (97) as if fully restated

herein and further states as follows:

157.    TransUnion, Equifax, and Experian are each subject to, and violated the provisions of, 15 United states Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

158.    Specifically, despite receiving Plaintiff's First Experian Dispute Letter and Second Dispute Letter  to TransUnion, Equifax, and Experian, the CRAs failed to review and consider all information received in Plaintiff's disputes, including all relevant attachments.

159.    TransUnion's, Equifax's, and Experian's failure to review and consider all information received in Plaintiff's dispute, including all relevant attachments, was done in bad faith.

160.    TransUnion's, Equifax's, and Experian's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT EIGHT:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)</u>**

Plaintiff re-alleges paragraphs one (1) through ninety-seven (97) as if fully restated herein and further states as follows:

161.    TransUnion, Equifax, and Experian are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete

any information that was the subject of Plaintiff's disputes as inaccurate or that could not be verified.

162.    Specifically, despite receiving Plaintiff's First Experian Dispute Letter and Second Dispute Letter, in which Plaintiff directly informed TransUnion, Equifax, and Experian that the Debt associated with the Account was satisfied by virtue of the Gap Coverage Payment , TransUnion, Equifax, and Experian failed to update or delete information on Plaintiff's credit reports with respect to the Account that was either inaccurate or could not be verified.

163.    As a direct result of TransUnion's, Equifax's, and Experian's conduct, actions, and/or inactions, Plaintiff sustained damages to her credit and loss of access to credit, as well as the collecting of a Debt that knowingly was satisfied and no longer owed.

164.    TransUnion's, Equifax's, and Experian's conduct was a direct and proximate cause of, as well as a substantial factor in, Plaintiff's serious injuries, damages, and harm as more fully stated herein.

165.    TransUnion's, Equifax's, and Experian's actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.     Judgment against Hyundai Finance declaring that Hyundai Finance violated the FCCPA and the FCRA;

b.     Judgment against Hyundai Finance for maximum statutory damages for the violations of the FCCPA;

c.     Judgment against Hyundai Finance enjoining them from engaging in further conduct in violation of the FCCPA;

d.     Judgment against Defendants for maximum statutory damages for violations of the FCRA;

e.     Actual damages in an amount to be determined at trial;

f.     Compensatory damages in an amount to be determined at trial;

g.     Punitive damages for violations under the FCCPA and FCRA in an amount to be determined at trial;

h.     An award of attorneys' fees and costs; and

i.     Any other such relief the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right.

## <u>SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE</u>

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

KOPP LAW, P.A.

/s/ *Rebbecca A. Goodall*
William J. Kopp, Esq.
Florida Bar No.:  83605
Rebbecca A. Goodall, Esq.
Florida Bar No.:  0115344
360 Central Ave
Suite 1570
St. Petersburg, FL 33710
(813) 999-3355; (727) 999-2016 (fax)
Attorneys for Plaintiff,
Asmi Kessler

34